**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CORDARRO T. DORSEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:23-cv-15149** |
| **THE CITY OF CHICAGO, and** | ) | |
| **Chicago Police Officers DANIEL FAIR,** | ) | |
| **FRED  B. COFFEY, KEVIN TAYLOR,** | ) | **Judge Rebecca R. Pallmeyer** |
| **JEFFERY MORROW, LAUREN HOLT,** | ) | |
| **ARIEL WILLIAMS, WILLIAM T. SIERZEGA,** | ) | |
| **ANTHONY SANCHEZ, CARLOS PONCE,** | ) | |
| **MARCUS TURNER, and GABRIEL CAMPOS,** | ) | |
| **in their individual capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Cordarro Dorsey ("Dorsey") brings this pro se action against the City of Chicago ("the City") and four sets of Chicago Police Department ("CPD") officers.  With respect to all four sets of officers, Dorsey claims violation of his Fourth Amendment rights and seeks relief pursuant to 42 U.S.C. § 1983.  Dorsey also brings common law malicious prosecution claims against three of the four sets of officers.  Finally, Dorsey brings claims against the City under § 1983 on a *Monell* theory, alleging that the City maintained a practice or custom of allowing or turning a blind eye to constitutional violations committed by CPD officers and that this practice or custom caused Dorsey's alleged injuries.

From a plain reading, the court concludes that Dorsey has asserted four distinct complaints into a single filing, even labeling those complaints separately within the document.  Dorsey's first complaint concerns the actions of Defendant Officer William T. Sierzega ("Sierzega") on September 17, 2018.  A second complaint concerns the actions of Officers Fred B. Coffey ("Coffey"), Daniel Fair ("Fair"), Jeffery Morrow ("Morrow"), and Kevin Taylor ("Taylor") on July 4, 2021.  The third complaint concerns the actions of Defendant Officers Lauren Holt ("Holt") and Ariel Williams ("Williams") on November 19, 2022.  The fourth and final complaint

concerns the actions of Defendant Officers Gabriel Campos ("Campos"), Carlos Ponce ("Ponce"), Anthony Sanchez ("Sanchez"), and Marcus Turner ("Turner") on February 12, 2023.

All Defendants have moved to sever Dorsey's claims [26]. Defendants Sierzega [27], Coffey, Fair, Morrow, and Taylor [28], and the City [31] have also moved to dismiss Dorsey's complaint(s) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Those motions are now fully briefed.[1]

The court grants the motion for severance. Dorsey's claims against the four sets of officer Defendants (and related *Monell* claims against the City) are misjoined: those claims do not stem from the same transaction or occurrence. The court will order the cases severed and assign an individual case number to Dorsey's cases against (i) Sierzega and the City; (ii) Coffey, Fair, Morrow, Taylor, and the City; (iii) Holt, Williams, and the City; and (iv) Campos, Ponce, Sanchez, Turner, and the City.

Further, for the reasons set forth below, the court grants Sierzega's motion to dismiss the claims against him and the City's motion to dismiss the *Monell* claims arising from the episode involving Sierzega. The motion to dismiss filed by Coffey, Fair, Morrow, and Taylor is granted in part and denied in part. Dorsey's *Monell* claims relating to the officers other than Sierzega are dismissed with leave to amend.

To this point, Dorsey's allegations have been scattered across a wide range of filings. For each of the three, separate cases that survive this ruling, Dorsey must file with the court a separate, streamlined complaint. The streamlined complaints are not opportunities for Dorsey to revive claims that the court has already dismissed in this order— the goal is for Dorsey to put forth a short and plain statement of his claim for relief. Dorsey is directed to review the court's

---

[1] After Dorsey filed oppositions to the Defendants' motions and Defendants replied, Dorsey filed another round of oppositions to the motions; the court accepted these additional filings and directed Defendants to file sur-replies. [64]. After the Defendants filed their sur-replies, Dorsey attempted to file yet another round of oppositions, but the court rejected this attempt. [75, 77].

online resources for pro se litigants and to schedule an appointment with the court's pro se help desk before filing these documents.[2]  Dorsey is also advised that he need not present all of the evidence he believes will support his claims in these streamlined documents, and that beyond the three new complaints, the court is not inclined to consider further amendments or other, unauthorized filings.  To the extent that Dorsey raises any new legal theories in the streamlined complaints, Defendants will have the opportunity to move to dismiss those claims.

## BACKGROUND

The court will recount in detail the allegations set forth in Dorsey's second amended complaint (Compl. [13]) as against those Defendants who have moved to dismiss his claims: Sierzega, Coffey, Fair, Morrow, Taylor, and the City.  As to the two sets of Defendants who have not yet moved to dismiss Dorsey's claims (Holt and Williams, and Campos, Ponce, Sanchez, and Turner) it will suffice for the purposes of this motion to note that Dorsey's claims against them include unlawful search and seizure, use of excessive force, and malicious prosecution.  (*Id.* ¶¶ 20–33.)

In addition to the allegations in his complaint, the court will also consider documents "attached to the complaint" and documents "central to the complaint" and "referred to in it."  *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017).  Factual allegations raised in Dorsey's briefing on the pending motions are also properly considered, to the extent that those assertions add detail to Dorsey's complaint, rather than contradict or fundamentally alter the narrative.  *See Smith v. Dart*, 803 F.3d 304, 331 (7th Cir. 2015) ("facts alleged by a plaintiff in a brief in opposition to a motion to dismiss may be considered when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint").  Plaintiff Dorsey submitted some ten documents in response to the motions to dismiss, several of them without

---

[2]    *See* U.S. DIST. CT. N.D. ILL., *Pro Se / Representing Yourself*, https://www.coop.ilnd.uscourts.gov/LandingPage.php?page=pro_se; U.S. DIST. CT. N.D. ILL*., Hibbler Federal Court Help Desk*, https://hibbler-memorial-pro-se-assistance-program.appointlet.com.

leave of court [41, 43, 47, 48, 49, 59, 60, 61, 62, 63]. The court has allowed these multiple filings, but as explained in a recent order, the record is now closed, and the court declines to consider materials filed well after briefing of these motions was otherwise complete [70, 71, 72, 73, 74].

## I. Allegations against Sierzega

Dorsey's allegations against Sierzega stem from an encounter that took place on September 17, 2018. (Compl. ¶ 1.) Dorsey was involved in a car accident that day in the Gresham neighborhood of Chicago, and sustained "severe injuries, including a broken face."[3] (*Id.* ¶ 2–3.) At some point after this accident occurred, Sierzega arrived on the scene and proceeded to "detain and arrest" Dorsey. (*Id.* ¶ 3.) Sierzega administered several "field sobriety tests," which Dorsey passed, but Sierzega refused to administer a "breath sobriety test" as Dorsey requested, and instead "coerced [Dorsey] into allowing a hospital to draw blood," which Dorsey describes as a violation of his bodily integrity. (*Id.*) Dorsey was detained for nearly sixteen hours[4], though it is not clear where; his car, a 2011 Chrysler Town & Country van modified to be handicap accessible for use by Dorsey's brother, was also impounded. (Opp. to Sierzega [43] at 2.)

Following these incidents, Dorsey's driver's license was summarily suspended for driving under the influence ("DUI") pursuant to 625 ILCS 5/11-501.1 on December 24, 2018; this suspension was later rescinded by a judge. (Compl. ¶ 6; Opp. to Sierzega at 7.) Dorsey also appears to have received, on September 17, 2018, a ticket for speeding in violation of 625 ILCS 5/11-601. (Opp. to Sierzega at 8.) Proceedings on these two civil infractions[5] dragged on until

---

[3]     Dorsey does not offer any details regarding the accident itself.

[4]     Dorsey's detention lasted into the following calendar day. (*See* Opp. to Sierzega at 2 (identifying relevant dates as October 17 and 18, 2018, rather than September 17 and 18).)

[5]     The imposition of a summary license suspension following arrest "is an administrative function of the [Illinois] Secretary of State." *People v. Ciechanowski*, 379 Ill. App. 3d 506, 511, 884 N.E.2d 714, 719 (2008). The suspension is not a criminal penalty. *People v. Orth*, 124 Ill. 2d 326, 337, 530 N.E.2d 210, 215 (1988). The driver's due process rights in the license are satisfied by the availability of a "limited civil hearing" to challenge the suspension; "the driver may file a written request for a judicial hearing in the circuit court of venue within 90 days of receiving notice of the suspension." *Ciechanowski*, 379 Ill. App. 3d 506 at 511, 884 N.E.2d at

September 27, 2023, when the prosecution filed a *nolle prosequi* motion, terminating the case. (Opp. to Sierzega at 8–12.)  Dorsey characterizes these proceedings as a "malicious prosecution" against him that lasted five years before "all charges were dismissed" by a judge in September 2023.  (Compl. ¶ 6.)

The extent of liability Dorsey faced as a result of his arrest by Sierzega is not clear, but the language of his pleadings suggests Dorsey faced not only civil penalties (the suspension of his license and the speeding ticket), but additional criminal charges related to his DUI arrest.  As a result of the arrest and prosecution, Dorsey was "removed from trucking school," required to pay fees to the City, and suffered "severe emotional distress [and] physical harm."  (*Id.* ¶¶ 5–7.) Further, Dorsey was never able to recover his car from impound.  (Opp. to Sierzega at 2.)

## II.    Allegations against Coffey, Fair, Morrow, and Taylor

Dorsey's allegations against Officers Coffey, Fair, Morrow, and Taylor stem from an encounter on July 4, 2021.  (Compl. ¶ 8.)  On that date, Dorsey was parked on the 600 block of West 123rd Street in Chicago, having just dropped off a friend and her children at their home, when he was approached by officers Fair, Morrow, and Taylor, who initiated a stop.  (*Id.* ¶ 9.) Dorsey alleges that he requested that the officers call their sergeant to the scene, and that the sergeant, Defendant Coffey, arrived soon thereafter.  (*Id.*)  Once Coffey arrived, Dorsey told him that he did not consent to any search or seizures.  (*Id.*)

According to Dorsey, in response to the officers' request, he provided his valid driver's license and proof of insurance and registration.  (*Id.* ¶ 10.)  Sergeant Coffey demanded that Dorsey exit the car, and Dorsey did so "in an attempt to avoid noncompliance and [escalation]."

---

719.  Unless the court enters an order rescinding the suspension within 45 days of a defendant's DUI arrest, the suspension will take effect, regardless of whether a petition to rescind is pending. *Id.*

Under Illinois law, speeding becomes a criminal offense when the offender is driving 26 miles per hour or more in excess of the applicable limit.  625 ILCS 5/11-601.5.  Dorsey was ticketed only for a "failure to reduce speed" under sister provision 5/11-601.

(*Id.*)  The officers then subjected Dorsey to an "invasive and degrading search" inside Dorsey's underwear and removed Dorsey's socks.  (*Id.* ¶ 12.)  Following the search, the officers had Dorsey's car towed, and then arrested Dorsey, placing him in "excessively tight" handcuffs though he had offered no resistance.  (*Id.* ¶ 14.)  The events resulted in Dorsey's suffering a panic attack and vomiting.  (*Id.* ¶ 14.)  The officers transported Dorsey to a Cook County correctional facility, where he was held and subjected to "inhumane treatment" for several days before being released.  (*Id.* ¶ 14.)  Dorsey's car was "seized and towed."  (*Id.* ¶ 13.)

Following his release from detention in the Cook County facility, Dorsey was placed on electronically monitored home confinement for nearly16 months while the prosecution remained pending.  (*Id.* ¶ 14.)  Dorsey does not identify the charges against him but alleges that they were dismissed by the Circuit Court of Cook County on an unspecified date in October 2022.  (*Id.* ¶ 16.)  Dorsey alleges that Officer Taylor failed to appear at these proceedings, and that the judge in the criminal case found that the arresting officers had violated his Fourth Amendment rights.[6] (*Id.*)

In February 2023, Dorsey filed a complaint with Chicago's Civilian Office of Police Accountability ("COPA") regarding the actions of Coffey, Fair, Morrow, and Taylor on July 4, 2021, and sent a letter of intent to sue to the Fifth District of the CPD.  (*Id.* ¶ 18.)  Dorsey has provided a copy of a letter he received from the CPD's Bureau of Internal Affairs ("BIA"), dated September 27, 2023, responding to Dorsey's COPA complaint.[7] (*See* [1] at 12–15.)  As the court reads that letter, BIA sustained some, but not all of Dorsey's allegations regarding Fair, Morrow, and Taylor.[8]

---

[6]    Dorsey has not provided a case number for or any documentation from this criminal case and has not otherwise explained how or why the judge in that case purportedly reached this conclusion (perhaps in ruling on a motion to suppress, though this is not clear).

[7]    The investigation of civilian complaints filed with COPA is conducted by COPA itself and the BIA.  *See* CHICAGO CIVILIAN OFF. OF POLICE ACCOUNTABILITY, *Complaints*, https://www.chicagocopa.org/complaints/.

[8]    When a COPA (or BIA) finds an allegation "sustained," COPA has "determined the allegation is supported by a preponderance of the evidence"; when COPA finds an allegation "not

Specifically, the BIA found that all three officers had failed to timely activate their body worn cameras in violation of CPD policy. The BIA did *not* sustain Dorsey's allegations that the officers had improperly handcuffed Dorsey, or that they had damaged Dorsey's car while searching it. (*Id.* at 13–15.) The BIA did not recommend a penalty for Fair, Morrow, or Taylor, other than having the violation noted. (*Id.*)

According to Dorsey, officers Coffey, Fair, Morrow, and Taylor have all previously been "reprimanded, terminated, demoted, suspended, and/or investigated" based on allegations similar to Dorsey's. (Compl. ¶ 17.) A June 2024 Chicago Sun-Times article reported on a COPA investigation that concluded officers Fair, Morrow, and Taylor had repeatedly engaged in coordinated misconduct throughout the year 2021. (*See* Opp. to Coffey, et al. at 10–12.) According to the article, on four occasions during that year, some combination of Fair, Morrow, Taylor, and an officer named Rupert Collins improperly seized guns from Chicago residents and then lied about where and/or how they came across the guns. (*Id.* at 11.) The article reported, further, that COPA had found that officers Fair and Taylor had stolen marijuana and cash from two Chicagoans following an improper vehicle search on June 15, 2021; at the time, the victims had been sitting in a parked car on the 500 block of West 127th Place.[9] (*Id.* at 11.)

### III.   Allegations against the City

Dorsey generally alleges that the City, "through its policies, practices, and customs, has created and maintained a widespread pattern and practice of unconstitutional conduct" through the CPD, and that the City has "implemented policies, practices, and customs that encourage,

---

sustained," COPA has determined that there is insufficient evidence to prove the allegations by a preponderance. CHICAGO CIVILIAN OFF. OF POLICE ACCOUNTABILITY, *How to Read a Final Summary Report*, https://www.chicagocopa.org/investigations/how-to-read-a-case-summary-report/.

[9]     This address is about a half mile away from the 600 block of West 123rd Street, where Dorsey says he was parked in his car on July 4, 2021 when Fair, Morrow, and Taylor approached him.

condone, and protect" that conduct.[10]  (Compl. ¶¶ 39, 41.)  The alleged unconstitutional practices that Dorsey describes include: "racial profiling," "racially influenced traffic stops," "unlawful searches and seizures," use of "excessive force," and "unlawful use of databases" to access civilian records "in attempts to find probable cause in order to seize" Chicago residents.  (*Id.* ¶ 43.)  Dorsey charges that "particular Chicago communities" have been subjected to this treatment.  (*Id.*)  Dorsey adds that these practices have become entrenched, at least in part, because CPD officers know they benefit from "some type of 'immunity,'" and because the officers use a "Code of Silence" to shield themselves from accountability.  (*Id.*)  This behavior, Dorsey alleges, has cost the City "billions" of dollars "in the past decade alone."  (*Id.*)

To bolster these allegations, Dorsey has attached to his briefing a 191-page report issued in 2020 by the City "to inform the public about lawsuits against the City involving allegations of civil rights violations or injuries due to a vehicle pursuit involving a CPD officer."[11]  (Opp. to City's Mot. [41] at 7.)  The report, which is limited to litigation in the year 2019, states that settlements and jury awards resulting from excessive force claims against CPD officers cost the City $10.6 million in payouts that year.  (*Id.* at 15.)  In the same year, settlements and jury award stemming

---

[10]    Dorsey has directed the court's attention to existing CPD regulations on "Standards of Conduct" for officers.  (Opp. to City's Mot. [41] at 3; *see also* City's Sur-Reply [69] at 3.)  Dorsey does not identify any particular aspect of the official policy that he finds problematic; rather, he appears to present this official CPD policy to highlight the standards the CPD *should* be upholding, in contrast with what Dorsey alleges are CPD's standards in practice. ([41 at 3.)

[11]    This report was produced as a requirement of a Consent Decree that the City entered into with the State of Illinois in January 2019; the purpose of the Consent Decree is to "ensure that the City and CPD deliver services in a manner that fully complies with the Constitution and laws of the United States and the State of Illinois, respects the rights of the people of Chicago, builds trust between officers and the communities they serve, and promotes community and officer safety."  (*State of Illinois v. City of Chicago*, No. 17 C 06260 (N.D. Ill), [Dkt. No. 703 ¶ 2].)  The Consent Decree was borne of a complaint filed by the State that alleged that the CPD "violate[d] the Constitution, and state and federal laws, by engaging in a pattern of using excessive force, including deadly force, in a manner that disproportionately harms Chicago's African American and Latino residents," and more generally "engage[d] in a pattern and practice of civil rights violations and unconstitutional policing."  (Id. at ¶ 4.)  The City entered into the Consent Decree "because the City is committed to continual improvement in the delivery of police services, and in order to avoid protracted and expensive litigation," but denied the claims in the State's complaint and did not admit any liability of any sort.  (Id. ¶ 5.)

from claims that CPD officers "deprived the plaintiffs of their constitutional procedural rights" cost the City $10.2 million—deprivations defined by the report to include "illegal searches and seizures, extended detentions, false arrest, [and] malicious prosecution." (*Id.*)

Apart from the 2019 litigation report, Dorsey offers very little detail concerning the CPD's alleged practices or customs of engaging in unconstitutional conduct. Beyond describing unconstitutional actions, Dorsey has not made additional allegations regarding a department-wide practice or custom regarding any of them and has not described the role of any City officials in turning a blind eye to the claimed misconduct. Dorsey asserts that the existence of such customs or practices has been "proven in numerous federal and state court hearings," but does not offer any relevant examples of court opinions or jury verdicts confirming the existence of such practices (Compl. ¶ 43.) Similarly, Dorsey avers that City policies and practices "have been factually proven to be the moving force behind these continuous violations and acts of misconduct," but cannot or does not allege where or when this was proven. More importantly, he does not explain how the alleged widespread misconduct confirms that the Defendants engaged in wrongdoing in his own case.

## LEGAL STANDARDS

In this order, the court addresses the pending motion to sever filed by all Defendants, as well as the motions to dismiss filed by the City and two sets of the CPD officers named in Dorsey's pro se complaint. The standards that govern these motions are familiar.

Persons may be joined in one action as defendants only if:

(A)     any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B)     any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a)(2); *see also Mitchell v. Kallas*, 895 F.3d 492, 502–03 (7th Cir. 2018) (plaintiffs "may join defendants in the same action only if the claims against each one arise out of the same transaction, occurrence, or series of transactions or occurrences.") "Misjoinder occurs when the

parties fail to satisfy either of the requirements of Rule 20(a)."  *McDowell v. Morgan Stanley & Co, Inc.*, 645 F. Supp. 2d 690, 694 (N.D. Ill. 2009).

Where defendants have been misjoined, district courts have discretion to sever the claims against them into separate proceedings, so long as the claims are "discrete and separate." *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (citing FED. R. CIV. P. 21).  Claims are "discrete and separate" if one claim is capable of resolution despite the outcome of the other.  *Gaffney*, 451 F.3d at 442.

When considering a motion to dismiss, courts must accept the "well-pleaded facts in the complaint as true and draw reasonable inferences in the plaintiff's favor."  *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024).  Further, pro se filings like Dorsey's must be construed liberally. *Johnson v. Prentice*, 29 F.4th 895, 903 (7th Cir. 2022).  Nevertheless, even pro se pleadings "must go beyond mere labels and conclusions" and "raise a right to relief above the speculative level" to survive a motion to dismiss.  *Brockett v. Effingham Cnty., Ill.*, 116 F.4th 680, 685 (7th Cir. 2024).

## DISCUSSION

### I.    Motion to Sever

As established above, under Federal Rule of Civil Procedure 21, district courts have discretion to sever claims if the claims were improperly joined to begin with and are otherwise "discrete and separate."  The claims against four sets of individuals in this case were not properly joined in the first place, and do not meet the "discrete and separate" test.

There is no claim on Dorsey's part that the four sets of Defendants officers share joint and several liability.  Indeed, Dorsey concedes in his objection to the Defendants' motion to sever that "the events in question are *separate occurrences* involving different Chicago police officers." (Opp. to Severance [42] at 1 (emphasis added).)  That these Defendants "are all employed by the City of Chicago and operate under the same policies and practices" (*id.*) is not enough to make joinder proper.  The court therefore grants the severance motion and will direct the Clerk to assign

a separate case number to each of Dorsey's four claims: one against Sierzega and the City; one against Coffey, Fair, Morrow, Taylor, and the City; one against Holt, Williams, and the City; and one against Campos, Ponce, Sanchez, Turner, and the City.

## II.     Motions to Dismiss

In liberally construing Dorsey's pro se pleadings, the court will examine the substance of Dorsey's allegations, rather than the labels attached to them by Dorsey. That said, the court need not, and will not, "imagine every possible argument" in Dorsey's favor simply because he is pro se. *Harris v. United States*, 13 F.4th 623, 629 (7th Cir. 2021).

### A.  Sierzega

Against Sierzega, Dorsey appears to have alleged claims of unlawful arrest, unlawful pretrial detention, and malicious prosecution under the Fourth Amendment and § 1983, as well as malicious prosecution under Illinois tort law. As explained below, all of Dorsey's federal claims against Sierzega are untimely . The court dismisses those federal claims and declines to exercise supplemental jurisdiction over the remaining state law claim.

### 1.      Statute of Limitations Defenses to Unlawful Arrest and Detention Claims

Sierzega argues that Dorsey's unlawful arrest and detention claims are untimely. "The statute of limitations provides an affirmative defense," and it is Sierzega's burden to prove the defense; that said, if the complaint "sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). "Claims under § 1983 borrow the statute of limitations for personal injury actions in the state in which the cause of action arose," *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 477 (7th Cir. 2024)—in Illinois, two years. 735 ILCS 5/13-202. But it is federal law that determines when a cause of action under § 1983 accrues—that is, when the statute of

limitations begins to run.  *Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 668 (7th Cir. 2018) (*Manuel II*).[12].

Sierzega contends that Dorsey's causes of action for unlawful arrest and detention accrued at the time the alleged misconduct occurred on September 17, 2018.  (Sierzega Mot. [27] at 4.)  This is because that was the time when Dorsey "[knew] or had reason to know of the injury which is the basis of his action."  (*Id.* (quoting *Serino v. Hensley*, 735 F.3d 588, 591 (7th Cir. 2013).)  Because Dorsey filed his complaint in October 2023, far more than two years after the date of alleged misconduct, Sierzega reasons that the unlawful arrest and detention claims must be time-barred.  (Sierzega Mot. at 4–5.)  Sierzega is slightly off about when these causes of actions accrued, but it makes no difference to the result.

A Fourth Amendment claim for unlawful pretrial detention accrues when the detention ends, rather than at the time the person is detained.  *Mitchell v. City of Elgin*, 912 F.3d 1012, 1013 (7th Cir. 2019) (citing *Manuel*, 903 F.3d at 670).  Because Dorsey's 16-hour detention ended on either September 17 or September 18, 2018, his claim arising from the detention was time-barred by the time Dorsey filed suit in this court in October 2023.

Sierzega cites *Wallace v. City of Chicago,* 440 F.3d 421, 427 (7th Cir. 2006), for the proposition that a § 1983 unlawful arrest claim accrues at the time of arrest.  (Sierzega Mot. at 4.)  The Supreme Court granted certiorari in *Wallace* and clarified that the statute of limitations for the unlawful arrest claim begins to run not at the time of arrest, but when the victim is held pursuant to "legal process"—for example, when the victim is "bound over by a magistrate or arraigned on charges."  *Wallace*, 549 U.S. at 389.[13]  Dorsey's complaint does not make clear when he was subjected to legal process in his prosecution, but in order to fall within the two-year statute of

---

[12]     The cited decision in *Manuel* was issued on remand following the Supreme Court court's decision in *Manuel v. City of Joliet, Ill.*, 580 U.S. 357 (2017) (*Manuel I*).

[13]     A more recent Supreme Court decision, *McDonough v. Smith*, shed light on (or perhaps called into question) some of the reasoning in *Wallace*, but left in place *Wallace*'s holding on the accrual of the false arrest claim.  *See* 588 U.S. 109, 122 (2019).

limitations, it must have occurred no earlier than October 2021. Even a favorable reading of Dorsey's complaint cannot support that inference.

Dorsey now argues for equitable tolling of the time for filing of his unlawful arrest and detention claims against Sierzega because Sierzega "actively misled" Dorsey about the status of Dorsey's case, and Dorsey's reliance on these misrepresentations supposedly prevented him from timely filing his claims. (Second Opp. to Sierzega [62] at 2.) When a federal court borrows a state's statute of limitations—as in § 1983 claims—the court must also borrow that state's equitable tolling rules. *Towne v. Donnelly*, 44 F.4th 666, 671 n. 7 (7th Cir. 2022).

Under Illinois law, "equitable tolling of a statute of limitations may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum." *Am. Fam. Mut. Ins. Co. v. Plunkett*, 14 N.E.3d 676, 681, 2014 IL App (1st) 131631, ¶ 32 (2014). "Extraordinary barriers include legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence." *Id*.

No such "extraordinary barriers" exist here. Dorsey's suggestion that Sierzega's "persistent attendance at legal proceedings over five years" was somehow misleading has no merit. If anything, Sierzega's attendance (likely required, as the proceedings related to a case in which he was the arresting officer) provided Dorsey with ample information and notice about the identity of any defendant(s) and the accrual of the claim. Dorsey identifies no other circumstances that prevented his filing of a timely lawsuit challenging his arrest. Equitable tolling is "rarely applied" by the Illinois courts, and Dorsey has not presented sufficient reason to apply it here. *Plunkett*, 14 N.E.3d at 681, ¶ 33. Dorsey's Fourth Amendment claims against Sierzega for unlawful arrest and detention are dismissed.

### 2.    Malicious Prosecution

To succeed on a claim of malicious prosecution under Illinois law, a plaintiff must establish "(1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) malice; and (5) damages." *Holt v. City of Chicago*, 214 N.E.3d 877, 899–900, 2022 IL App (1st) 220400, ¶ 67 (2022).

A malicious prosecution claim is available under federal law as well:  In *Thompson v. Clark*, the Supreme Court recognized a "Fourth Amendment claim under § 1983 for malicious prosecution," incorporating into federal law the common-law tort of malicious prosecution as it existed in 1871, when § 1983 was enacted.  596 U.S. 36, 42–43 (2022).[14]  *Thompson* confirmed that the federal claim, like its state law cousin, requires "the wrongful initiation of charges without probable cause," and a showing that the prosecution has terminated in the plaintiff's favor (without requiring an "affirmative indication of innocence.")  *Id.* at 43, 48.  The *Thompson* majority explained, however, that a § 1983 malicious prosecution claim, unlike the common law version, requires that the prosecution have resulted in a seizure of the plaintiff.  *Id.* at 42 n. 2.  The Court declined to decide whether the federal claim requires a showing of malice (or some other *mens rea*) in addition to the absence of probable cause.  *Id.* at 44 n. 3.

Sierzega addresses only the federal malicious prosecution claim and argues that it must fail because Dorsey "cannot show that he was seized pursuant to the legal process surrounding his criminal case."  (Sierzega Mot. at 5.)  The court agrees: although Dorsey alleges he was

---

[14]    *Manuel I*, 580 U.S. 357 (2017), had left some doubt as to whether a Fourth Amendment claim was triggered by a wrongful prosecution, or whether the actionable wrong was simply being "held in custody without probable cause."  *See Manuel II*, 903 F.3d at 670 (on remand); *see also Thompson*, 596 U.S. at 50 (Alito, J., dissenting) (arguing that the Court had previously "never held that the Fourth Amendment houses a malicious-prosecution claim.")

detained by Sierzega immediately following his arrest, Dorsey has not alleged that he was ever detained as a result of his prosecution.[15]

Because Dorsey's federal claims against Sierzega have all been dismissed, this court declines to exercise supplemental jurisdiction over the remaining state law malicious prosecution claim and dismisses it accordingly. *See Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.") The court now turns to the motion to dismiss filed by Coffey, Fair, Morrow, and Taylor.

### B.    Coffey, Fair, Morrow, and Taylor

As with Sierzega, Dorsey brings claims of unlawful arrest, unlawful detention, and malicious prosecution against Coffey, Fair, Morrow, and Taylor[16]; in addition, Dorsey has asserted claims of excessive force in violation of the Fourth Amendment.[17]

---

[15]    Without deciding the issue, the Seventh Circuit has previously expressed "misgivings about construing a simple obligation to appear in court" as a Fourth Amendment seizure, noting that "[c]onverting every traffic ticket into a nascent Fourth Amendment claim" would seem to require "an aggressive reading of the constitutional text." *Mitchell v. City of Elgin*, 912 F.3d 1012, 1016 (7th Cir. 2019). *See also, e.g., Mayo v. LaSalle Cnty.,* No. 18 CV 01342, 2019 WL 3202809, at *5 (N.D. Ill. July 15, 2019) ("A requirement to appear somewhere simply does not fit within the Supreme Court's test for whether a seizure has occurred"); *Spring-Weber v. City of Chicago*, No. 16 C 8097, 2018 WL 4616357, at *12 (N.D. Ill. Sept. 26, 2018) (there is not a seizure "every time the government compels a person to be in a particular place.")

[16]    Based on the Chicago Sun-Times' reporting on the alleged, coordinated misdeeds of Defendants Fair, Morrow, and Taylor, Dorsey's allegations hint at a conspiracy claim against those officers as well. As Dorsey's current pleadings do not fairly put Defendants on notice of such a claim, the court declines to consider it here.

[17]    Dorsey also appears to claim that he is "not bound by state codes and statutes" and was not subject to the "jurisdiction of the violating officers." ([60] at 1.) This is the case, Dorsey argues, because he is a "private American national." (*Id.*) This appears to be a version of the well-worn "sovereign citizen" theory, in which litigants argue that they cannot be subjected to state (or sometimes, federal) jurisdiction without their consent. *See, e.g., Bey v. State*, 847 F.3d 559, 559–60 (7th Cir. 2017) (Plaintiff, self-proclaimed "sovereign citizen" claimed he could not "lawfully be taxed by Indiana or its subdivisions in the absence of a contract between them.") The Seventh Circuit has "repeatedly rejected" these claims, *id.*, and the court will not entertain them here.

Dorsey alleges he was parked on a residential street on the South Side of Chicago on the evening of July 4, 2021 when officers Fair, Morrow, and Taylor subjected him to a stop. At Dorsey's request, Sergeant Coffey was summoned to arrive on the scene. Dorsey alleges he was arrested and subjected to a degrading body search, despite having followed the officers' directions to provide a valid driver's license, and proof of registration and insurance. Following his arrest, Dorsey asserts, he was placed in exceedingly tight handcuffs and taken to a Cook County correctional facility, where he was held in detention for several days. Dorsey's vehicle was towed at the time of his arrest. Upon his release from Cook County, Dorsey was subject to electronic home monitoring for almost 16 months until his prosecution on (unspecified) criminal charges, ultimately dismissed by the presiding judge in October 2022.

Like Officer Sierzega, Officers Coffey, Fair, Morrow, and Taylor have raised timeliness defenses to Dorsey's Fourth Amendment claims for use of excessive force, unlawful arrest, unlawful detention, and to Dorsey's state law claim for malicious prosecution. (Coffey, et al. Mot. [28] at 4–5.) In response, Dorsey has not suggested that he was unaware that he had been arrested, or subjected to force, or placed on electronically monitored home confinement at the time these things happened. Instead, Dorsey argues that his claims did not accrue until the conclusion of his criminal case, because his "awareness of the full extent of his injuries and violations was not immediate, but rather emerged gradually following the court proceedings and verdict." (Second Opp. to Coffey, et al. [63] at 1.) Alternatively, Dorsey argues that the statute of limitations should be equitably tolled. (*Id.*)

Dorsey's arguments on accrual and tolling fall short. True, his malicious prosecution claims did not accrue until the underlying proceeding terminated in his favor (and Defendants do not argue that the federal malicious prosecution claim is time-barred). *Thompson v. Clark*, 596 U.S. 36, 44 (2022); *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99, 820 N.E.2d 455, 459 (2004). But under Seventh Circuit law, § 1983 claims accrue on the date "the plaintiff could have sued for their injuries," because plaintiffs are presumed to know that their constitutional rights have been

violated at the time the violations occur.  *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006).  The circumstances here support that presumption:  Dorsey knew about his claims of unlawful arrest, excessive force, and unlawful detention at the time the relevant events occurred.  Equitable tolling is appropriate where the plaintiff could not reasonably have discovered the facts entitling him to relief.  *See Ralda-Sanden v. Sanden*, 989 N.E.2d 1143, 1145–49, 2013 IL App (1st) 121117, ¶¶ 5–26 (2013) (the time for filing of plaintiff's paternity claims under the Illinois Parentage Act of 1984, which would have begun to run when plaintiff turned 18, was equitably tolled where uncontroverted affidavits established that the plaintiff's mother had falsely represented to plaintiff that her father was dead until plaintiff was 21 years old).  The doctrine does not save an untimely claim merely because a plaintiff, like Dorsey, was aware of facts supporting his claim but allegedly unaware that the law might entitle him to relief.

Having disposed of Dorsey's accrual and tolling arguments, the court now examines Dorsey's claims against Coffey, Fair, Morrow, and Taylor in turn.

### 1.     Excessive Force

A Fourth Amendment claim of excessive force during an arrest "accrues immediately" at the time of arrest.  *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010).  The statute of limitations on this § 1983 claim, borrowed from Illinois tort law, is two years.  *See supra* at p.11.  Dorsey's excessive force claim accrued on July 4, 2021, the date he was allegedly arrested by Coffey and company.  When he filed this case on October 19, 2023, the two-year statute of limitations had elapsed.  Dorsey's excessive force claim is dismissed.

### 2.     Unlawful Arrest

The officers cite *Rosado v. Gonzalez,* 832 F.3d 714 (7th Cir. 2016) for the proposition that Dorsey's cause of action for false arrest accrued at the time of his arrest (Mot. at 1).  This is not quite correct; what *Rosado* actually reaffirms is that "the statute of limitations for a false-arrest claim 'begins to run at the time the claimant becomes detained pursuant to legal process,' meaning when the claimant is 'bound over for trial.'"  Rosado, 832 F.3d at 716 (citing *Wallace*,

17

549 U.S. at 391); *see also supra* at p.12 (detention pursuant to legal process may also begin at arraignment). Still, the officers' statute of limitations defense against Dorsey's false arrest claim is ultimately successful.

Dorsey has not identified the date on which he was bound over or arraigned. What *is* apparent, though, is that Dorsey was subjected to legal process within a few days of his arrest in July 2021, when he was released from detention at a Cook County facility and placed on electronically monitored home confinement. Because more than two years passed from July 2021 to the filing of Dorsey's complaint in October 2023, Dorsey's unlawful arrest claim against Coffey and company is time-barred and must be dismissed.

### 3. Unlawful Detention

Unlawful pretrial detention can occur in varied circumstances, including "when the police hold someone without any reason before the formal onset of a criminal proceeding," or "when the legal process itself goes wrong—when, for example, a judge's probable cause determination is predicated solely on a police officer's false statements." *Moorer v. City of Chicago*, 92 F.4th 715, 720 (7th Cir. 2024). "Similarly, the withholding of information by officers that would be material to the probable cause determination can also undermine the probable cause determination and result in a violation of the Fourth Amendment." *Id.* As explained above, claims for unlawful pretrial detention under § 1983 accrue when the detention ends.

To the extent that Dorsey challenges his brief detention in a Cook County correctional facility in July 2021, the unlawful detention claim is clearly barred under the applicable two-year statute of limitations. The question is whether the conditions of Dorsey's alleged pretrial electronically monitored home confinement—which did not terminate until October 2022, and thus would not be time-barred—implicated the Fourth Amendment. The court concludes here that it did.

Prior to the Supreme Court's decision in *Manuel I*—which held that "the Fourth Amendment governs a claim for unlawful pretrial detention beyond the start of legal process," 580

U.S. 357, 369 (2017)—the position of the Seventh Circuit was that Fourth Amendment claims were viable only "up to the point of arraignment." *Mitchell*, 912 F.3d at 1017. In *Mitchell v. City of Elgin*, the Seventh Circuit mused that under the new *Manuel I* regime, "pretrial release might be construed as a seizure for Fourth Amendment purposes if the conditions of that release impose significant restrictions on liberty." *Id.* at 1016. The court did not rule directly on the issue, however; the parties had not briefed it, and the release conditions that had been imposed on the plaintiff in that case were not clear from the record. *Id.* at 1016–17; *see also Mitchell v. Doherty*, 37 F.4th 1277, 1285 (7th Cir. 2022) (reiterating that the Seventh Circuit did not decide the scope of a Fourth Amendment seizure in *Mitchell v. City of Elgin*) (no apparent relation between appellant Mitchells).

As in *Mitchell v. City of Elgin*, the precise restrictions imposed on Dorsey during his pretrial release are not clear at this stage. In other cases presenting such circumstances, unlawful detention claims have survived pleadings challenges; Dorsey's claim does as well. *See, e.g. Wright v. Gualandri,* No. 20 C 4504, 2021 WL 679249, at *1 (N.D. Ill. Feb. 21, 2021) (at the motion to dismiss stage, the court was "not in a position to know" the extent of plaintiff's bond conditions, or "how severely the bond may have impacted" her; as a result, dismissal of her claims was "inappropriate"); *Soto v. City of Chicago*, No. 20 C 1805, 2020 WL 6321939, at *3 (N.D. Ill. Oct. 28, 2020) (inappropriate to dismiss plaintiff's claim at the pleading stage where the court could not "determine with certainty" whether plaintiff's pretrial release imposed significant restrictions on liberty.)

### 4. Malicious Prosecution

Dorsey brings malicious prosecution claims against Coffey and company under both Illinois law and § 1983. The officers raise a statute of limitations defense to the state law claim and attack both the state and federal law claims as insufficient pleaded.

As described above, under both federal and Illinois law, malicious prosecution claims accrue upon favorable termination of the underlying criminal proceeding in the would-be plaintiff's

favor. *See supra* at p.16. With respect to the state law malicious prosecution claim, the officers benefit from the Illinois Tort Immunity Act, which sets a one-year statute of limitations for tort claims brought against municipal employees. 745 ILCS 10/8-101; *see also Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (confirming that this one-year limitations period applies to state-law claims that are joined with a § 1983 claim, "while the two-year period still applies to § 1983 claims against such defendants.")

Dorsey's complaint alleges that his underlying criminal case was dismissed on an unspecified date in October 2022. In their motion to dismiss, officers Coffey, Fair, Morrow, and Taylor claim that Dorsey has identified the date as October 3, 2022—but paragraph 16 of Dorsey's complaint, which the Defendants cite, does not support the proposition. (Coffey, et al. Mot at 2.) Similarly, the officers have otherwise failed to introduce any judicially noticeable material that would establish October 3, 2022 as the date in question. As discussed above, a statute of limitations defense will only prevail at the pleading stage where the necessary elements are set out in the plaintiff's pleading papers. *See supra* at p.11.

Coffey, Fair, Morrow, and Taylor also argue, however, that Dorsey's state and federal malicious prosecution claims are insufficient in that Dorsey has not alleged that the officers lacked probable cause to arrest and detain him. (Coffey, et al. Mot. at 5–6; Coffey, et al. Reply [54] at 4–5; Coffey, et al. Sur-Reply [68] at 6.) The officers are correct that the existence of probable cause for Dorsey's arrest would defeat his claims for malicious prosecution. *See supra* at p.13–14. And indeed, while Dorsey has alleged that he was "lawfully parked" on the street at the time Fair, Morrow, and Taylor, initiated the stop on July 4, 2021, he has not actually alleged that he was arrested without probable cause, or even identified the charges on which he was prosecuted.

Because Dorsey may well be able to cure this pleading defect, his state and federal malicious prosecution claims are dismissed with leave to amend. If he chooses to replead these claims, Dorsey must include an allegation that would confirm there was no probable cause for his arrest at the hands of Coffey, Fair, Morrow, and Taylor, and should identify the charges on which

he was prosecuted and the date when the proceedings against him terminated.  The officers may raise the statute of limitations defense, if applicable, at that time.

      **C.**    **City of Chicago**

In *Monell v. Dep. of Soc. Servs.*, the Supreme Court held that a municipality may be liable under § 1983 for its own violation of the federal Constitution and laws.  436 U.S. 658, 690–91 (1978).  To prove that conduct is properly attributable to a municipality itself, the plaintiff must show that the constitutional violation was caused by a governmental "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (quoting *Monell*, 436 U.S. at 694).

The Seventh Circuit has interpreted this language in *Monell* as creating three pathways to municipal liability under § 1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority."  *First Midwest Bank*, 988 F.3d at 986.  In this case, Dorsey appears to follow the "widespread practice" pathway, as he does not allege the existence of an express policy that caused his alleged violations, or that his injuries were directly caused by a person with final policymaking authority.

Regardless of the pathway to municipal liability, however, the law is clear that "a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee."  *Doxtator v. O'Brien*, 39 F.4th 852, 864 (7th Cir. 2022).  As established above, all of Dorsey's constitutional claims against Sierzega are barred by the applicable statute of limitations and must be dismissed.  To the extent that Dorsey's *Monell* claims against the City extended from his federal claims against Sierzega, the *Monell* claims are also dismissed.

The City further argues for dismissal of all of Dorsey's *Monell* claims— that is, those stemming from the conduct of not only Coffey, Fair, Morrow, and Taylor, but also the conduct of

21

Defendants who have not moved to dismiss Dorsey's claims—because Dorsey has insufficiently pleaded the existence of any widespread practice on the part of the City. (City's Mot. at 5–6.) The court agrees but will grant Dorsey leave to amend his pleadings in this regard.

The Seventh Circuit has not adopted "bright-line rules" defining "widespread custom or practice," but the plaintiff's allegations must point to "evidence that the unlawful practice was so pervasive that the acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020). Allegations that simply describe "isolated instances of misconduct . . . on the part of individual employees" will not suffice. *Id.* at 480. Nor do Dorsey's broad allegations of unconstitutional policing support an inference that the incidents he complains of were a product of that policy.

To be clear, Dorsey is not required to lay out in his complaint every possible detail that could support *Monell* liability—far from it. *See Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1029 (7th Cir. 2024) (courts' "expectations at the pleading stage must be commensurate with the information available at this pre-discovery stage.") But in order to meet the plausibility pleading standard, Dorsey must "present a story that holds together." *Id.* at 1028 & n.23.

Dorsey is welcome to fill in the gaps in the streamlined complaints for the three separate cases that will emerge from this order. For now, his remaining *Monell* claims must be dismissed.

## CONCLUSION

For the reasons described above, the Defendants' motion to sever is granted, as is Defendant Sierzega's motion to dismiss. Defendants Coffey, Fair, Morrow, and Taylor's motion to dismiss is granted with respect to Dorsey's unlawful arrest and excessive force claims but denied with respect to Dorsey's malicious prosecution and unlawful detention claims. Because all claims against Sierzega have been dismissed, Dorsey's *Monell* claim against the City relating to the September 2018 incident must also be dismissed with prejudice. Dorsey's *Monell* claims against the City regarding the other Defendants are dismissed with leave to amend.

ENTER:

Dated:  January 28, 2025

REBECCA R. PALLMEYER
United States District Judge