UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CORDARRO T. DORSEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 23 C 15149 |
| ) | |
| **THE CITY OF CHICAGO, Chicago** ) | Judge Rebecca R. Pallmeyer |
| **Police Officers DANIEL FAIR, FRED B.** ) | |
| **COFFEY, KEVIN TAYLOR, and JEFFREY** ) | |
| **MORROW, and CHICAGO** ) | |
| **POLICED DEPARTMENT,** ) | |
| ) | |
| **Defendants.** | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cordarro Dorsey has had a number of run-ins with Chicago police. In October 2023, he filed a *pro se* complaint against the City and a host of police officers, alleging that CPD violated his constitutional rights on four separate occasions over multiple years. The court severed the claims and dismissed one of them as time barred. Dorsey seeks to revive that claim in this lawsuit, but for the reasons explained here, the effort fails.

The episode again before the court occurred on the evening of July 3, 2021, when *pro se* Plaintiff Cordarro Dorsey was stopped by officers of the Chicago Police Department ("CPD"). After a search of his person and vehicle revealed a firearm that did not belong to him, police officers placed Dorsey under arrest. He was placed on pretrial electronic monitoring for over a year, but released when the charges against him were dropped. In the amended complaint now before the court, Dorsey attempts again to assert claims against the involved officers ("Defendant Officers"), the City of Chicago (the "City"), and CPD, alleging violations of 42 U.S.C. § 1983 and Illinois state tort law. Defendants have moved [97, 99] to dismiss, and as explained below, the court grants both motions.

**BACKGROUND**

I.    **Factual Background**

The facts laid out below are taken from Dorsey's Fourth Amended Complaint [121] ("FAC"), which the court accepts as true at the pleading stage.

At around 11:30 p.m. on July 3, 2021, Dorsey was "lawfully parked outside a friend's residence after dropping off their children." (FAC ¶ 8.) An "unmarked CPD SUV approached," and CPD Officers Morrow, Taylor, and Fair exited the vehicle and approached Dorsey. (*Id.*) Morrow shined his flashlight into the vehicle, and inquired about Dorsey's activities. Dorsey explained that he had just conducted "a lawful drop-off" and was leaving, but the officers blocked him in and CPD Sergeant Coffey ordered him out of the vehicle. (*Id.* ¶¶ 9–10.) After he stepped out of the vehicle, Dorsey was handcuffed. (*Id.* at 6.) He claims that the handcuffs were too tight, and that he "couldn't breathe due to the tight cuffs" and being forced "to stand prolonged." (*Id.*) He "became nauseous and vomited" as a result. (*Id.*) Dorsey claims that the officers then subjected him to a public strip-search, and that he was ordered to remove his shoes, socks, and underwear.[1] (FAC ¶ 10(c).) During the search, officers seized a set of keys that unlocked a gun safe in Dorsey's vehicle; they opened it and found a "legally owned firearm" that was registered to Dorsey's romantic partner. (*Id.* ¶ 10(d).) Upon discovering the weapon, Dorsey alleges, the officers "began to clap their hands as if they had won a championship ring." (*Id.* at 6.)

Dorsey was then arrested—he does not say on what charge—and was held temporarily at a police facility in Chicago. (*Id.* ¶ 16.) He was later released on electronic monitoring, and was required to wear an ankle bracelet for sixteen months. (*Id.*) During the pendency of the charges, Dorsey asserts, Defendant Officers "submitted false testimony, failed to appear in court, and

---

[1] The court notes that prior iterations of Dorsey's complaint describe the search somewhat differently. *Compare* FAC ¶ 10(c) ("Officers strip-searched Plaintiff in public, removing shoes, socks, and underwear."), *with* Am. Compl. [13] ¶ 12 ("Defendants conducted an invasive and degrading search of the Plaintiff, including going inside the Plaintiff's underwear and removing the Plaintiff's socks."). The court accepts the latest version as true for the purposes of this motion.

prolonged prosecution maliciously." (*Id.* ¶¶ 11–12.) The charges were later dropped via a *nolle prosequi*, which Dorsey claims was due to an unspecified Fourth Amendment violation. (Opp'n [108] at 2.)

## II. Procedural Background

On October 19, 2023, Mr. Dorsey sued the City of Chicago and many individual CPD officers, alleging that four separate encounters—including the one at issue here—with the police violated 42 U.S.C. § 1983 and Illinois state tort law. (*See* Compl. [1].) He subsequently amended the complaint twice [10, 13]. Defendants moved to dismiss [27, 28, 31]. In its Order addressing the motions, the court observed that each of the four encounters described in Dorsey's submissions was a "separate occurrence[] involving different Chicago police officers"; the court ordered the claims severed and docketed as four separate cases. *See* Order on First Motion to Dismiss [86], 2025 WL 327425, at *6 (N.D. Ill. Jan. 28, 2025). As part of that ruling, the court addressed the incident at issue here and concluded that any claim arising out of that incident is time-barred or does not state a claim for relief. The court again granted him leave to amend his complaint.

Dorsey did so, filing his Third Amended Complaint [94] on May 21, 2025. Defendant Officers again moved to dismiss on timeliness grounds and for failure to state a claim [97], and the City of Chicago moved separately for dismissal, arguing it could not be held liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and that Dorsey lacked standing to pursue injunctive relief. In response to these motions, Dorsey filed a brief in opposition [108], and Defendants replied [109, 110]. But on November 12, 2025, with the motions to dismiss fully briefed and pending, Dorsey requested leave to file a Fourth Amended Complaint [121], which the court granted with some reluctance. Defendants filed supplemental briefs [135, 136] incorporating their prior briefing, which Dorsey opposed [138], and the motions are once again fully briefed.

3

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. "[S]ubject matter jurisdiction is a fundamental limitation on the power of a federal court to act." *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 980 (7th Cir. 2000). If a federal court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). As the party invoking federal jurisdiction, Dorsey bears the burden of establishing jurisdiction. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020).

Likewise, a motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. FED. R. CIV. P. 12(b)(6); *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive, a complaint "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Fosnight v. Jones*, 41 F.4th 916, 921–22 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 922 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage in the litigation, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014).

*Pro se* complaints like Dorsey's are construed liberally. *Johnson v. Prentice*, 29 F.4th 895, 903 (7th Cir. 2022). Nonetheless, even *pro se* pleadings must go beyond mere labels and conclusions and "raise a right to relief above the speculative level" to survive a motion to dismiss. *Brockett v. Effingham Cnty.*, 116 F.4th 680, 685 (7th Cir. 2024) (quoting *Twombly*, 550 U.S. at 555). The court need not "imagine every possible argument" in Dorsey's favor simply because he is *pro se*. *Harris v. United States*, 13 F.4th 623, 629 (7th Cir. 2021).

**DISCUSSION**

Dorsey's sprawling Fourth Amended Complaint raises fourteen claims in total, but they can be separated into five buckets: (1) claims arising out of the officers' conduct during the July 3–4, 2021, traffic stop; (2) a malicious prosecution claim; (3) *Monell* claims against the City of Chicago; (4) claims for injunctive relief; and (5) claims brought under Illinois state law. The court examines each in turn.

**I.     Traffic Stop**

Defendants first argue that Dorsey's § 1983 claims relating to the officers' conduct during the traffic stop—unlawful seizure, excessive force, false arrest, unlawful search, and failure to intervene—are time-barred. (Officers' Supp. Br. [135] at 3.) The court agrees.

"Claims under § 1983 borrow the statute of limitations for personal injury actions in the state in which the cause of action arose," *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 477 (7th Cir. 2024)—in Illinois, two years. 735 ILCS 5/13-202. While timeliness is an affirmative defense, it is well-established that a complaint may be dismissed at the pleading stage when the facts, as pleaded, "plainly reveal[] that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005); *see also Logan v. Wilkins,* 644 F.3d 577, 582–83 (7th Cir. 2011) (affirming dismissal of plaintiff's complaint at the pleading stage because it was obvious that the plaintiff's claims are time barred).

Here, Dorsey's dispute with Defendant Officers occurred on the night of July 3–4, 2021, more than two years before this case was filed on October 19, 2023, so those claims cannot proceed. As noted, this court already dismissed those claims on timeliness grounds in its First Motion to Dismiss Order. 2025 WL 327425, at *9–12. Dorsey's Fourth Amended Complaint raises these claims again in a materially identical way, and they are again dismissed, this time with prejudice.

Dorsey has not effectively responded to the conclusion the court reached months ago (and reiterates now). He observes, first, that "This Court has twice granted Plaintiff leave to

5

amend in light of these issues. Defendants' renewed limitations argument does not present intervening law, or new facts sufficient to justify reconsideration." (Supp. Opp'n [138] at 2–3.) But this is an obvious misconstruction of the case status. The court's earlier order *dismissed* these claims on statute of limitations grounds. Defendants do not request reconsideration of that order, they request that the court stand by it. Second, Dorsey has requested, via a separately filed motion [107], that the court relate back under FED. R. CIV. P. 15(c) the claims in his amended complaint to the original filing date, which he asserts was November 3, 2023 (an odd request, as the case was in fact filed two weeks earlier).[2] (*See* Mot. to Relate Back [107] at 1.) But both the correct filing date, and certainly the date Dorsey invokes now, post-date the events of July 3–4, 2021, by more than two years. They do not alter the court's conclusion.

Dorsey's final response is a request that the court defer ruling on the statute of limitations because he "realized his claims only after his initial case was dismissed," and that his purported late realization requires that the statute of limitations issue be determined by a jury. (Mot. to Relate Back [107] at 2.) The court is not persuaded. His "initial case" (presumably the earlier iterations of his complaint) included claims that are essentially identical to those he now raises in the Fourth Amended Complaint; it makes no sense for Dorsey to argue that he only became aware of claims he in fact attempts to assert again after the court previously dismissed them.

It appears that Dorsey intends to invoke the "discovery rule," which holds that an injury does not accrue until the plaintiff realizes that he has been injured. *See, e.g.*, *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) ("The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the 'discovery rule' of federal common law, which is read into statutes of limitations in federal-question cases (even when those statutes of limitations are borrowed from

---

[2] Because it does not ultimately make a difference in this case, this motion is stricken as moot. The court suspects that Dorsey mistakenly filed this motion on the docket in this case instead of one of his other cases before this court.

state law)."). But Dorsey was certainly aware that he was injured at the time of the stop. He was physically present, experienced the events firsthand, and necessarily would have perceived any pain, force, embarrassment, or any resulting injury at the time it occurred. His reported belief that he did not realize he had been injured for several months is simply implausible in this context.[3] *See Towne v. Donnelly*, 44 F.4th 666, 670 (7th Cir. 2022) (stating that "a claim under § 1983 accrues when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief" (citation and quotations omitted)).

Moreover, as the court explained in its prior opinion, the discovery rule applies whenever a plaintiff is unaware of the *facts* of his injury, not that the *law* entitles him to relief. Even if Dorsey was truly unaware at the time that his injuries could be remedied via a federal lawsuit, his claim remains untimely. *See* First Mot. to Dismiss Order, 2025 WL 327425, at *10.

## II.     Malicious Prosecution

A claim of malicious prosecution under § 1983 is, essentially, a Fourth Amendment claim for "unreasonable seizure pursuant to legal process." *Thompson v. Clark*, 596 U.S. 36, 42 (2022). To state such a claim, Dorsey must plausibly allege "(1) the judicial proceeding was instituted without probable cause; (2) the motive for the proceeding was malicious; and (3) the prosecution ended in the plaintiff's favor." *Lee v. Harris*, 127 F.4th 666 (7th Cir. 2025); *see also Thompson*, 596 U.S. at 45–48 (clarifying that a prosecutor's dismissal of a case qualifies as a favorable termination for purposes of a § 1983 malicious prosecution claim).

This claim, too, must be dismissed. While he makes the perfunctory assertion that he was arrested without "reasonable suspicion or probable cause" (*e.g.*, FAC ¶ 14), Dorsey's operative

---

[3] In *Devbrow v. Kalu*, 705 F.3d 765 (7th Cir. 2013), the case Dorsey cites in support of his theory, the Seventh Circuit held that the "statute of limitations for a § 1983 deliberate-indifference claim brought to redress a medical injury does not begin to run until the plaintiff knows of his injury and its cause." *Id*. at 766. In that case, the injury was prostate cancer, and the court found that the statutory clock did not begin to run until the prisoner was informed that he had been diagnosed with prostate cancer. Dorsey's case is clearly different. Unlike prostate cancer, Dorsey's injuries were such that he would immediately become aware of them when they occurred.

7

complaint does not state what crime he was charged with or under what pretenses the officers detained him. The court is unable to assess whether he plausibly alleged the lack of probable cause without knowing precisely what crime he was accused of committing. *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 715 (7th Cir. 2013) (stating that the "existence of probable cause" depends on the "elements of the predicate criminal offense(s) as defined by state law"). Absent this information, Dorsey does not state a plausible claim.

And, while the complaint itself does not describe his charges, an exhibit filed by Dorsey entitled "Criminal Disposition Sheet" provides some answers. (FAC, Ex. Q [121] at 30.) This document, if accurate, states that Dorsey was charged with aggravated use of a weapon in violation of 720 ILCS 5/24-1.6(a)(1), and with possession of a weapon despite having a previous felony conviction, in violation of 720 ILCS 5/24-1.1(a). (*Id.*) The first of these offenses criminalizes carrying "in any vehicle . . . any pistol, revolver, stun gun or taser or other firearm" whenever "the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card." 720 ILCS 5/24–1.6(a)(1)–(3)(c). Dorsey himself alleges that (1) officers found a key on his person, (2) that key opened a gun safe in his vehicle, and (3) that gun safe contained a firearm belonging to another person. (FAC ¶ 10.) He has not alleged that he had a valid permit to carry that firearm or that he has no previous criminal record. These facts do not suggest the lack of probable cause—to the contrary, they strongly suggest that there was cause for his arrest on these charges. The court understands that the charges were later dismissed (on Fourth Amendment grounds, according to Dorsey), but subsequent dismissal of charges does not mean that the police lacked probable cause to arrest him on the night of July 3, 2021. *See Lee*, 127 F.4th at 676 ("The existence of probable cause . . . serves as a defense against both federal and state-law malicious prosecution claims."); *see also Abbott*, 705 F.3d at 714)–715 (observing that officers will likely receive qualified immunity so long as there is "arguable probable cause").

The § 1983 malicious prosecution claim is dismissed.

8

### III. *Monell* Liability

In *Monell,* the Supreme Court held that a municipality may be liable under § 1983 for its own violations of the U.S. Constitution or federal law. 436 U.S. at 690–91. To prove that conduct is properly attributable to a municipality itself, the plaintiff must show that a constitutional violation was caused by a governmental "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (quoting *Monell*, 436 U.S. at 694).

The *Monell* liability doctrine has no application here. Because *Monell* liability is predicated on a violation of § 1983, "a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee." *Doxtator v. O'Brien*, 39 F.4th 852, 864 (7th Cir. 2022) (quoting *Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010)). As explained above, each of Dorsey's federal-law claims against employees of the City of Chicago must be dismissed, either on timeliness grounds or for failure to state a claim. Without a predicate violation by an employee, his claim against the City must be dismissed as well. The court observes, further, that if he had a cognizable claim, Dorsey would be entitled to just one recovery; that the City is indemnifying its officers likely means the court need not separately determine whether City policy is behind any alleged violation.

Dorsey also contends that opposing counsel's conduct during this litigation itself constitutes a constitutional violation that supports his *Monell* claim. In the FAC and in a separate 95-page filing entitled "Supplemental Evidence in Support of Economic and Punitive Damages, and to Establish Pattern and Practice," he asserts that the City's decision to participate in this litigation at all "further evidences" a "policy, practice, and custom of obstructing accountability for police misconduct." (FAC ¶¶ 36–42.) He points to numerous examples of alleged misconduct of opposing counsel: counsel (1) argued that his claims were not timely; (2) asserted that his failure to rebut arguments results in forfeiture; (3) filed "serial motions to dismiss"; (4) sought to "stay or limit discovery" while motions are pending; (5) "coordinated" "identical defenses across multiple

9

officers"; and (6) was involve[d] in the "City's practice of providing full legal defense and indemnification to officers."[4] (*Id.* ¶¶ 38–44; Supp. Evid. [128] at 9–10.) His brief in opposition echoes many of these same arguments, accusing opposing counsel of "misuse of legal formalities" and "demoralizing the self-represented plaintiff" through "legal technicalities such as statute of limitations, failure to plead plausibly, etc."[5] (Opp'n [108] at 4.) He also sees impropriety in Defendants' refusal to accept his multi-million dollar "global settlement demand," which he claims "falls well below the City's median and high-exposure case ranges and aligns with the Department of Law's own fiscal precedent for non-fatal constitutional violations." (Supp. Evid. [128] at 11, 51–52.)

The court sees little reason to dwell at length on this argument, beyond noting that settlement proposals and responses are inadmissible to prove or disprove any claim. FED. R. EVID. 408(e). The other conduct he rails against are instances of routine litigation practice, not bad-faith activity by the City or counsel. Defendants have a right to vigorously defend themselves in this lawsuit, and their filing of motions and refusal to accept his settlement demand do not amount to a policy or practice of constitutional violations sufficient to trigger *Monell* liability. Further, while timeliness rules and pleading standards are no doubt confusing and demoralizing, the court has given Dorsey great latitude here, yet he makes no allegations that suggest he has a timely or plausible claim for relief.

---

[4] The court notes that the operative complaint demands that the City indemnify the police officers involved in this case (FAC ¶ 19), but simultaneously argues that the City's practice of doing just that constitutes a violation of the Constitution (*id.* ¶ 45).

[5] Dorsey also accuses opposing counsel of adopting contradictory positions: he states that Defendants' "strategy of dismissing claims based purely on procedural grounds" conflicts with their "admitting misconduct in the factual allegations." (Opp'n [108] at 4.) But at the pleading stage, the court and opposing counsel operate under the presumption that Dorsey's allegations are true—that Defendants' arguments assume, *arguendo*, his allegations are accurate does not constitute an admission that they are, in fact, factually accurate.

### IV. Injunctive Relief

In the FAC, in a section entitled "Equity-Based Claims," Dorsey asks for an injunction ordering various policy reforms at CPD; he notes that "monetary damage alone are [sic] inadequate to redress Plaintiffs injuries, as Defend unconstitutional policies persist and continue to endanger private individuals." (FAC ¶ 28–29.) These claims are dismissed for lack of standing.

Article III of the U.S. Constitution "confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 378 (2024). For there to be a "Case" or a "Controversy," each plaintiff in federal court must demonstrate standing—a "personal stake" in the case and its outcome. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The "irreducible constitutional minimum" of standing is composed of three elements: (1) an injury in fact, (2) caused by the defendant, (3) that would likely be redressed by judicial action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "As the party invoking federal jurisdiction," Mr. Dorsey bears the burden of establishing standing. *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024) (citing *Silha v. ACT, Inc.*, 808 F.3d 169, 173 (7th Cir. 2015)).

Because he requests injunctive relief, Mr. Dorsey must demonstrate "a substantial risk of future injury." *Murphy v. Missouri*, 603 U.S. 43, 69 (2024). His injury need not be "literally certain," but "it must be 'certainly impending.'" *Scholl v. Ill. State Police*, 776 F. Supp. 3d 701, 709 (N.D. Ill. 2025) (citing *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 410, 414 n.5 (2013)). As the Supreme Court explained in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), a "federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *Id.* at 111. To establish standing to seek injunctive relief, therefore, Dorsey must do more than simply point to past mistreatment by the police; he must show "a sufficient likelihood that he will again be wronged in a similar way." *Id.*

Dorsey has not done so. The criminal case against him has been dismissed, and he presents no facts or allegations that suggest he is in imminent danger of being harmed in the same manner. In fact, his brief in opposition entirely ignores Defendants' arguments as to

11

standing, suggesting that he concedes the matter. (*See generally* Opp'n [108].) All claims for injunctive or equitable relief are dismissed for lack of subject-matter jurisdiction.

### V. Remaining State Law Claims

Because the court has dismissed all claims over which it has original jurisdiction, the court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

### **CONCLUSION**

Defendants' motions to dismiss [97, 99] are granted. Because Plaintiff has had ample opportunities to adequately plead his case, all of his federal claims are dismissed with prejudice. His pending motion to relate back [107] is stricken without prejudice to renewal in his other matters before this court. With respect to this case, the Clerk is directed to enter judgment on all federal claims in favor of Defendants with prejudice and against Plaintiff. Dorsey's state law claims are dismissed without prejudice to proceeding in state court.

ENTER:

Dated: February 24, 2026

_____
REBECCA R. PALLMEYER
United States District Judge